No. 25-10687

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

United States of America,

Plaintiff – Appellee

v.

Emma Marie Stanley,

Defendant – Appellant

---

On Appeal from
United States District Court for the Northern District of Texas

3:23-CV-6

---

## BRIEF OF APPELLANT EMMA STANLEY

---

Respectfully submitted,

DAVID COFFIN, PLLC

*/s/ David Coffin*_____

David B. Coffin
SBT 24010807
300 Miron Dr.
Southlake, TX 76092
(817) 251-7049
(817) 796-1498 FAX
dcoffin@davidcoffinlaw.com
Attorney for Emma Stanley

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| United States of America | Rachel Wollitzer of U.S. Department of Justice Washington, DC |
| United States of America | Ramona Notinger of U.S. Department of Justice Dallas, TX |

| Appellants: | Counsel for Appellants: |
|---|---|
| Emma Stanley | David Coffin of David Coffin, P.L.L.C. Southlake, TX |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| John Stacey | Pro Se |
| ARTS Investments, LLC | Pro Se |
|  |  |

*/s/ David Coffin*
David B. Coffin
SBT 24010807
300 Miron Dr.
Southlake, TX 76092
(817) 251-7049
(817) 796-1498 FAX
dcoffin@davidcoffinlaw.com
Attorney on Record for Emma Stanley

iii

## **STATEMENT REGARDING ORAL ARGUMENT**

Defendant-Appellant Stanley respectfully requests oral argument. This appeal presents an issue of first impression in the Fifth Circuit regarding the proper scope of the judicially created duty of consistency. In granting summary judgment, the district court overbroadly applied the duty of consistency extending it far beyond its recognized limits despite the absence of controlling precedent. Oral argument would assist the Court in clarifying the doctrine's proper limits.

**TABLE OF CONTENTS**

Contents                                                                                                                Page(s)

CERTIFICATE OF INTERESTED PERSONS ....................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................................ iv

TABLE OF CONTENTS ...................................................................................... v

TABLE OF AUTHORITIES .................................................................................. 1

JURISDICTIONAL STATEMENT ....................................................................... 3

STATEMENT OF THE ISSUES ........................................................................... 3

STATEMENT OF THE CASE .............................................................................. 4

SUMMARY OF THE ARGUMENT ..................................................................... 6

ARGUMENT ........................................................................................................ 7

    I.   Standard of Review ..................................................................................... 7

    II.   Summary Judgement Standard .................................................................... 8

    III.   Duty of Consistency Standard ..................................................................... 8

    IV.   The District Court Erred in Applying the Duty of Consistency ................. 9

        a.   The Alleged Omission on Form 8857 was not a Material Representation. 10

b.   The Record Does Not Establish IRS Reliance............................................12

c.   Prejudice is not present ..........................................................................13

V.   Innocent Spouse Relief Evaluation ...........................................................15

VI.   The IRS would have granted Stanley innocent spouse relief even if the ARTS membership had been disclosed..............................................................16

VII.   Arizona State Property Law Subjects the Grand Prairie property to community property law division pursuant to Stanley and Stacey's Divorce Decree .......................................................................................................21

a.   Arizona State Law Controls Property Rights.............................................21

b.   Arizona Law Applies to LLC Ownership Interests ...................................24

c.   The United States' Tax Liens Attach Only to Stacey's Interest, Not to Stanley's One-Half Ownership .......................................................................26

CONCLUSION .................................................................................................27

CERTIFICATE OF SERVICE .........................................................................29

CERTIFICATE OF COMPLIANCE.................................................................29

# TABLE OF AUTHORITIES

**Cases**…………………………………………………………………**Pages(s)**

*Bender v. Bender*, 597 P.2d 993, 995, 123 Ariz. 90, 92 (Ariz. Ct. App. 1979) 22, 23

*Bryson v. Bryson*, No. 1 CA-CV 16-0531 FC, 2017 WL 2483722, at \*4 (Ariz. Ct. App. June 8, 2017)...................................................................................24

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ...........................................8, 17

*Cummings v. Weast*, 72 Ariz. 93, 231 P.2d 439 (Ariz. 1951)................................24

*DeWitt v. McFarland*, 112 Ariz. 33, 34, 537 P.2d 20, 21 (Ariz. 1975)...................22

*Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986). ...............................8

*GAF Corp. v. Diamond Carpet Corp.*, 117 Ariz. 297, 572 P.2d 125 (Ct. App. Div. 1 1977) ..................................................................................................24

*Herrington v. Comm'r*, 854 F.2d 755, 757 (5th Cir. 1988). ....................................6

*Lake v. Bonham*, 148 Ariz. 599, 601, 716 P.2d 56, 58 (Ariz. Ct. App. 1986).........22

*Lorenz-Auxier Financial Group, Inc. v. Bidewell*, 772 P.2d 41, 43, 160 Ariz. 218, 220 (Ariz. Ct. App. 1989)..............................................................................21

*MacCollum v. Perkinson*, 185 Ariz. 179, 183, 913 P.2d 1097, 1101 (Ct. App. 1996), corrected (Mar. 13, 1996) ..............................................................................24

*McIntosh v. Maricopa Cnty.*, 73 Ariz. 366, 370, 241 P.2d 801, 803 (Ariz. 1952)..22

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). ..............................................................................................................8

*Perez v. United States*, 2001 WL 1399229, at \*2 (W.D. Tex. Sep.20, 2001 ...........9

*Potthoff v. Potthoff*, 128 Ariz. 557, 561, 627 P.2d 708, 712 (App. 1981)...............22

*Schickner v. Schickner*, 348 P.3d 890 (Ariz. Ct. App. Div. 1 2015) .......................24

*Sommerfield v. Sommerfield*, 121 Ariz. 575, 577, 592 P.2d 771, 773 (Ariz. 1979)22

*Stephen v. Stephen*, 36 Ariz. 235, 284 P. 158 (Ariz. 1930) ...................................21

*Stock v. Stock*, 250 Ariz. 352, 355, 479 P.3d 859, 862 (Ariz. Ct. App. 2020) ........22

*United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985) ....... 21, 26

**Statutes**

26 U.S.C. § 6015(f)................................................................................................16

26 U.S.C. § 6330(e)(1)............................................................................................9

26 U.S.C. § 66(c) .......................................................................................... passim

Ariz. Rev. Stat. § 25-211 ................................................................................ 22, 25

Ariz. Rev. Stat. § 25-318 ......................................................................................23

1

**Other Authorities**

I.R.M. 25.15.3.9.4.1.2. ...................................................................................18

I.R.S. Form 8857, Part IV; I.R.S. Pub. 971, *Innocent Spouse Relief*, at 9 (Dec. 2021). ...................................................................................................................18

I.R.S. Notice CC-2012-004 (Jan. 5, 2012); ...........................................17

I.R.S. Notice CC-2013-011 (June 7, 2013)...........................................17

Internal Revenue Manual § 25.15.1 *et al*...............................................9

Rev. Proc. 2013-34, 2013-43 I.R.B. 397 ....................................... passim

2

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[1] The United States District Court for the Northern District of Texas entered the Final Judgment on June 18, 2025, disposing of all the parties' claims.[2] Stanley timely filed her Notice of Appeal on May 29, 2025.[3]

## STATEMENT OF THE ISSUES

This appeal concerns whether the district court erred in applying the duty of consistency, as well as disregarding state property law in a tax enforcement action involving co-owned assets subject to federal tax liens.[4]

1. Whether the district court erred in its application of the duty of consistency to estop Appellant Emma Stanley's claim to an interest in the Grand Prairie property.

---

[1] *See* FED. R. APP. P. 28(a)(4)(A)-(D).
[2] ROA.1994-96.
[3] *See* ROA.1992–93.
[4] *See* FED. R. APP. P. 28(a)(5).

3

2. Whether, even had the ARTS interest been disclosed on Form 8857, the outcome under 26 U.S.C. § 66(c) would not have changed, because the statutory factors still support granting innocent spouse relief.

3. Whether the district court erred in failing to apply Arizona community property law, which vests Ms. Stanley with an equal interest in property acquired during the marriage, including the Grand Prairie property.

## STATEMENT OF THE CASE

This appeal arises from a tax enforcement action in which the district court granted the United States the remaining proceeds from the sale of a Grand Prairie, Texas property owned by ARTS Investments, LLC ("ARTS"). Defendant-Appellant Emma Stanley and her former spouse, John Dee Stacey, were ARTS's only members. Throughout their marriage, Stacey concealed income and asset information, maintained exclusive control over finances, and subjected Stanley to extreme, prolonged physical, emotional, and psychological abuse.[5] In 2016, Ms. Stanley filed IRS Form 8857 requesting innocent spouse relief for tax years 2000 through 2003, leaving blank Part IV, which concerns economic hardship. The economic hardship factor is only one of many non-dispositive considerations under Rev. Proc. 2013-34, 2013-43 I.R.B. 397, which also accounts for marital status, lack

---

[5] ROA.1422–26; ROA. 1279–1305; ROA.1306–08.

4

of knowledge, reason to know, significant benefit, compliance with tax filings, legal obligations, and the presence of abuse. In 2017, the U.S. Tax Court granted Ms. Stanley innocent spouse relief upon agreement of the parties to the case. The record in this case, however, contains no explanation of the IRS's rationale because the agency failed to produce the underlying administrative file. There is no evidence whatsoever indicating the IRS relied on Ms. Stanley's supposed omission of income or asset information in granting her innocent spouse relief.

The district court nevertheless granted summary judgement for the government, holding Defendant-Appellant Stanley's omission of her ARTS interest on Form 8857 barred her, under the duty of consistency, from later asserting ownership of ARTS or any proceeds from the Government's forced sale of that interest. Therefore, the district court assumed, without evidentiary support in the record, that the omission would have altered the IRS's 26 U.S.C. § 66(c) determination, treated the absence of an economic hardship statement as dispositive in contravention of Rev Proc. 2013-34, and disregarded undisputed facts against the non-movant, including the impact of severe physical abuse on Ms. Stanley's ability to disclose. By elevating a limited omission on Form 8857 into a categorical bar to relief, the district court disregarded the statutory and equitable framework requiring a fact-intensive analysis of all relevant circumstances. This appeal seeks correction of that error.

## SUMMARY OF THE ARGUMENT

The district court's judgment should be reversed. The judicially created duty of consistency is a narrow equitable doctrine that only applies when a taxpayer makes a representation, the IRS relies on that representation, and the taxpayer later changes position to the government's detriment.[6] Defendant-Appellant Stanley's alleged omission of the ARTS interest on Form 8857 was not a factual misrepresentation but, at most, an incomplete disclosure relevant only to the assessment of the economic hardship factor of innocent spouse relief. Pursuant to Rev. Proc. 2013-34 § 4.03(2)(b), the absence of economic hardship is expressly treated as neutral and it does not weigh against relief. The IRS granted Stanley Innocent Spouse relief, but the record contains no evidence that the IRS relied on this alleged omission, and nothing suggests the U.S. Tax Court determination would have been different if the membership interest in ARTS had been disclosed. The district court erroneously expanded the duty of consistency.

The innocent spouse factors applied to Ms. Stanley's facts and circumstances overwhelmingly favor relief.[7] Marital status, lack of knowledge or reason to know, absence of significant benefit, subsequent tax filing compliance, and no legal

---

[6] *See Herrington v. Comm'r*, 854 F.2d 755, 757 (5th Cir. 1988).
[7] 26 U.S.C. § 66(c); Rev. Proc. 2013-34, 2013-43 I.R.B. 397.

obligation all weigh in Ms. Stanley's favor. Economic hardship would be neutral. Most importantly, the extreme and well-documented abuse, including physical violence leading to criminal charges, stalking, death threats, and hundreds of harassing telephone calls,[8] falls squarely within Rev. Proc. 2013-34's recognition that abuse may override all other factors and independently justify relief. Courts routinely grant relief wherein abuse explains a spouse's inability to disclose or resist financial control.[9] The record provides no rationale for the IRS's decision to grant Stanley Innocent Spouse relief in the U.S. Tax Court, and the mere allegation that she omitted information relevant to the economic hardship analysis does not, by itself, preclude such relief. Despite the lack of a record, it is more likely that the abuse endured by Stanley had a significant impact on the IRS' granting of relief. The district court improperly extended the duty of consistency beyond its equitable purpose while disregarding binding state property law to the detriment of the non-movant. Therefore, the Fifth Circuit should reverse the lower court decision, and enter judgment in favor of Defendant-Appellant Stanley recognizing her vested one-half interest in the proceeds from the Grand Prairie property.

## ARGUMENT

### I. Standard of Review

---

[8] ROA.1422–26; ROA. 1279–1305; ROA.1306–08.
[9] *See,* e.g., *Di Giorgio v. C.I.R.*, T.C. Memo. 2023-044; *Pocock v. C.I.R.*, 123 T.C.M. (CCH) 1293 (T.C. 2022); *Petree v. C.I.R.*, No. 26887-13S, 2017 WL 2821795 (T.C. June 29, 2017).

A district court's ruling on a motion for summary judgement is subject to de novo review.[10]

## II. <u>Summary Judgement Standard</u>

Summary judgment is proper if the movant demonstrates the absence of a genuine issue of material fact and is entitled to judgment as a matter of law.[11] A genuine dispute of material fact exists if the evidence would permit a reasonable jury to return a verdict for the nonmovant.[12] The movant "always bears the initial responsibility" of identifying record evidence that establishes its basis for judgment.[13]

## III. <u>Duty of Consistency Standard</u>

The duty of consistency is an equitable estoppel doctrine that prevents a taxpayer from taking a position in a later tax year that is inconsistent with a position taken in an earlier year if three elements are satisfied: (1) the taxpayer made a representation or reported an item for tax purposes; (2) the Commissioner relied on

---

[10] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009).
[11] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).
[12] *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).
[13] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986).

that representation; and (3) the taxpayer attempts to change the representation, resulting in prejudice to the Commissioner.[14]

## IV. The District Court Erred in Applying the Duty of Consistency

The duty of consistency is a narrow and applied sparingly only when a case involves clear factual representations such as valuation, basis, or the reporting of specific transactions that are determinative across multiple tax years.[15]

Defendant-Appellant Stanley's alleged omission on Form 8857 and her subsequent claim to the proceeds from the Grand Prairie, Texas property are fundamentally different legal tax issues. Defendant-Appellant Stanley's right to the proceeds of the Grand Prairie property does not contradict a fixed, factual representation but arises in the distinct context of an equitable relief determination.[16] Unlike valuation or basis cases where a single factual assertion controls the outcome, such as the computation of a lower tax owed, innocent spouse determinations are completed through a holistic balancing of facts and circumstances.[17] The IRS determines if innocent spouse relief is warranted by following the procedures

---

[14] *See Herrington v. Comm'r*, 854 F.2d 755, 758 (5th Cir. 1988).
[15] *See Herrington v. Comm'r*, 854 F.2d 755, 758 (5th Cir. 1988); *United States v. Jones*, 2011 WL 5166402, at *1, *8 (N.D. Tex. Nov. 1, 2011) (citing 26 U.S.C. § 6330(e)(1); *Perez v. United States*, 2001 WL 1399229, at *2 (W.D. Tex. Sep. 20, 2001); *United States v. Holmes*, 693 Fed. Appx. 299, 301 (5th Cir. 2017).
[16] *See* 26 U.S.C. § 66(c).
[17] *See* Rev. Proc. 2013-34, 2013-43 I.R.B. 397.

outlined in Internal Revenue Manual § 25.15.1 *et al.*, as well as in authorities such as Rev. Proc. 2013-34.[18] In U.S. Tax Court cases, IRS counsel follows the process set out in IRS Notices CC-2012-004 and CC-2013-011.[19] While IRS administrative files ordinarily contain the examiner's factor-by-factor analysis supporting an innocent spouse determination, the Government has failed to produce such information in Ms. Stanley's case.[20] The record does not establish that Stanley's alleged omission was material to the prior determination, relied upon by the IRS, or prejudicial to the government. Thus, none of the doctrine's elements are satisfied and this case falls outside the narrow scope in which the duty of consistency applies. The United States failed to meet its burden of proof, therefore the district court erred by applying the doctrine to bar Ms. Stanley's claim to the proceeds from the sale of the Grand Prairie property and its grant of summary judgment should be reversed.

a. <u>**The Alleged Omission on Form 8857 was not a Material Representation.**</u>

The first element of the duty of consistency doctrine requires a representation of fact.[21] The asset disclosure section of Form 8857 serves a narrow and limited function: to assist the IRS in evaluating the economic hardship factor in an innocent

---

[18] IRM 25.15.1.1.2 (06-26-2017).
[19] I.R.S. Notice CC-2012-004 (Jan. 5, 2012); I.R.S. Notice CC-2013-011 (June 7, 2013).
[20] IRM 25.15.1.1.2 (06-26-2017).
[21] *See Herrington v. Comm'r*, 854 F.2d 755, 758 (5th Cir. 1988).

spouse determination.[22] Rev. Proc. 2013-34 expressly provides that the absence of economic hardship is treated as neutral and does not weigh against relief.[23] Additionally, it explicitly recognizes that severe abuse may override the absence of hardship and independently justify relief.[24] Within these procedures, Stanley's alleged omission of her membership interest in ARTS in 2016 cannot be construed as an assertion of non-ownership for most tax purposes or as a statement material to the determination of innocent spouse relief.[25] Even if the evidence is viewed in the Government's favor, the alleged omission merely neutralizes one factor, while the others continue to weigh in Stanley's favor, thus the decision to grant relief would not have altered.

The record demonstrates that Ms. Stanley's financial disclosures were completed under continuing conditions of abuse. Although Stanley and Stacey's marriage dissolution was filed in 2011, Stacey's control and abuse did not end. He continued to stalk, harass, and intimidate Ms. Stanley and their child, creating an ongoing atmosphere of fear that impaired her ability to make independent financial representations.[26] Rev. Proc. 2013-34 recognizes that abuse may undermine a

---

[22] *See* I.R.S. Form 8857, Part IV; I.R.S. Pub. 971, *Innocent Spouse Relief*, at 9 (Dec. 2021); Rev. Proc. 2013-34 § 4.03(2)(b).
[23] *See* Rev. Proc. 2013-34 §§ 3.01, 4.03(2)(b).
[24] *Id.* § 3.01.
[25] *See* 26 U.S.C. § 66(c).
[26] *See* ROA.1157:23-1158:19; ROA.1306–08; ROA.1423:13–1424:15.

spouse's capacity to challenge or accurately disclose financial information, thereby mitigating any inference of knowledge.[27] Given the persistent coercion she endured treating Ms. Stanley's alleged omission as a binding factual representation not only distorts the limited purpose of Form 8857 but it also disregards the coercive circumstances under which it was signed. Consequently, the United States fails to meet the first element of the duty of consistency doctrine and fails to meet its burden of proof.

### b. The Record Does Not Establish IRS Reliance.

The second element of the duty of consistency requires the IRS to actually rely on a taxpayer's prior representation.[28] Defendant-Appellant Stanley does not meet this element. The U.S. Tax Court entered the Decision based upon agreement of the IRS and Ms. Stanley to grant Innocent Spouse Relief.[29] The Government's evidence provides no indication that the IRS examiners or IRS Counsel relied on the absence of reported assets in evaluating Ms. Stanley's request for relief, nor does it provide any explanation of how the economic hardship factor was weighed, or whether it was considered at all. Rev. Proc. 2013-34 requires evaluating multiple non-exclusive factors, including marital status, lack of knowledge, absence of

---

[27] Rev. Proc. 2013-34 §§ 3.01, 3.06–3.08.
[28] *See Herrington v. Comm'r*, 854 F.2d 755, 758 (5th Cir. 1988).
[29] ROA.1351.

significant benefit, and abuse. The record supports that relief would have been granted even if the membership interest in ARTS had been disclosed.[30] The well-documented abuse factor expressly provides overriding weight under Rev. Proc. 2013-34 § 3.01 and it alone could have compelled relief. The knowledge factor favored Ms. Stanley because she had no actual participation in ARTS, no access to its records, and received none of its reported income.[31] The significant benefit factor weighs strongly in favor of relief. Ms. Stanley lived modestly in her parents' home and derived no lifestyle enhancement from the unpaid liability.[32] By contrast, Mr. Stacey remains financially obligated to her in the amount of $591,663.94, consisting of arrears in child support and alimony, fraudulently cashed insurance proceeds, and unpaid rental income from ARTS.[33] This figure does not include the value of the Grand Prairie property. With these factors independently supporting relief, a reasonable fact-finder could easily conclude the IRS's decision would have been identical regardless of hardship.

### c. **Prejudice is not present**

---

[30] *See generally* ROA 1-1999.

[31] ROA.1225; ROA.1513:3-1513:10.

[32] ROA.1401-18.

[33] Stanley has shouldered the full burden of raising Stacey's child since 2007 and is owed substantial amounts by Stacey, including $103,224.68 in child support arrears, $60,000 in past-due alimony, and $251,678.26 from fraudulently retained insurance payouts. ROA.1292, 1401. Moreover, Stacey owes Stanley $176,761 in unpaid rental income from ARTS Investments. ROA.1401–18. Altogether, Stacey's financial obligations to Stanley total $591,663.94, excluding the value of THE GRAND PRAIRIE PROPERTY. ROA.1135:4–25; ROA.1279–1305.

13

The third element requires proof that a taxpayer's alleged change in position produced prejudice to the Government by altering the tax outcome in favor of the taxpayer.[34] The United States has not shown, and cannot show, that disclosure of the membership interest in ARTS would have changed the IRS's determination.[35] The IRS routinely grants innocent spouse relief wherein the requesting spouse holds equity in assets and is not required to forfeit them.[36] The record confirms Ms. Stanley received no actual income from ARTS, derived no lifestyle benefit from its assets, and lived under conditions of severe abuse and financial domination.[37] Under Rev. Proc. 2013-34, Stanley's facts and circumstances compel relief regardless of the presence of economic hardship. The abuse factor alone is recognized as capable of overriding contrary considerations, while the absence of economic hardship is expressly treated as neutral.[38] The remaining factors all independently favor relief, including marital status, lack of knowledge, absence of significant benefit, and absence of legal obligation. The government cannot establish that the alleged omission of the ARTS interest altered the determination to grant relief. The absence

---

[34] *Herrington v. Comm'r*, 854 F.2d 755, 758 (5th Cir. 1988); *LeFever v. Comm'r*, 103 T.C. 525, 543 (1994), supplemented, 70 T.C.M. (CCH) 98 (T.C. 1995), *aff'd*, 100 F.3d 778 (10th Cir. 1996), *aff'd*, 100 F.3d 778 (10th Cir. 1996).

[35] 26 U.S.C. § 66(c).

[36] *See Di Giorgio v. C.I.R.*, T.C. Memo. 2023-044 (relief granted despite ownership of $22,500 in jewelry); *Pocock v. C.I.R.*, 123 T.C.M. (CCH) 1293 (T.C. 2022) (relief granted despite ownership of $160,000 home); *Petree v. C.I.R.*, No. 26887-13S, 2017 WL 2821795 (T.C. June 29, 2017) (relief granted despite owning multiple vehicles and an RV).

[37] ROA.1422–26.

[38] *See* Rev. Proc. 2013-34 §§ 3.01, 3.06–3.08.

14

of prejudice confirms that Ms. Stanley did not violate the duty of consistency. Therefore, the United States did not meet its burden of proof, and summary judgment should be reversed.

### V. **<u>Innocent Spouse Relief Evaluation</u>**

The issue before this Court is not to reweigh the equitable factors of innocent spouse relief de novo, but to determine whether the Tax Court and the IRS relied on Stanley's alleged omission of financial information when granting her innocent spouse relief. Additionally, it is likely that the IRS, applying its own mandated procedures, and the U.S. Tax Court, would have reached the same conclusion to grant relief even if Stanley had disclosed her interest in the mobile home park on Part IV of the economic hardship assessment section of Form 8857. Generally, three types of innocent spouse relief claims are available to married persons who filed joint returns: traditional innocent spouse relief, separation of liability relief, and equitable relief.[39] Additionally, 26 U.S.C. § 66 provides traditional or equitable relief from income tax liability resulting from the operation of community property law to taxpayers domiciled in a community property state who do not file a joint return.[40]

The IRS evaluates claims for equitable relief under 26 U.S.C. § 66(c) utilizing the criteria set forth in *Rev. Proc.* 2013-34, which governs the procedures the IRS

---

[39] 26 U.S.C. § 6015; *see also* I.R.S. Pub. 971, *Innocent Spouse Relief*, at 2 (Dec. 2021).
[40] *See* Treas. Reg. § 1.66-4; *see also* Rev. Proc. 2013-14 § 2.02.

follows to review the requests of innocent spouse relief under both 26 U.S.C. § 66(c) and 26 U.S.C. § 6015(f).[41] The requesting spouse is required to meet five threshold conditions in order to qualify for submitting a request for equitable relief under section 66(c).[42] If met, then the IRS considers "all the facts and circumstances" in weighing the non-exclusive factors: marital status, economic hardship, knowledge, reason to know, abuse by the nonrequesting spouse, legal obligation, significant benefit, and compliance with income tax laws.[43] The U.S. Tax Court consistently holds equitable relief is a highly fact-intensive inquiry, with no single factor being dispositive.[44] Therefore, the relevant inquiry for this Court is to examine what the IRS would have done under its own published procedures, not a de novo analysis.

### VI. The IRS would have granted Stanley innocent spouse relief even if the ARTS membership had been disclosed

On April 3, 2017, Chief Judge Marvel granted innocent spouse relief to Defendant-Appellant Stanley pursuant to 26 U.S.C. § 66(c) for tax years 2000 through 2003.[45] Although the administrative file is absent from the record, the

---

[41] *See* Rev. Proc. 2013-34 § 1.01.

[42] *Wheeler v. Comm'r of Internal Revenue*, No. 15169-18S, 2021 WL 5834389, at *5 (T.C. Dec. 9, 2021).

[43] 26 U.S.C. § 66(c); *See* Rev. Proc. § 4.03(2)(a)–(g).

[44] *See* 26 U.S.C. § 66(c); *Parker v. C.I.R.*, 124 T.C.M. (CCH) 294 (T.C. 2022) (emphasizing that "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances") (citing Rev. Proc. 2013-34, 2013-43 I.R.B. 397); *see also Molinet v. Comm'r*, 107 T.C.M. (CCH) 1539 (T.C. 2014) (citing *see Pullins v. Commissioner*, 136 T.C. at 448; *Haigh v. Commissioner*, T.C. Memo.2009–140, slip op. at 34–35).

[45] ROA.1350–51.

determination itself confirms that the IRS or its trial attorneys evaluated Ms. Stanley's facts and circumstances and concluded that equitable relief was warranted.[46] The relief granted required a factor-by-factor analysis under the governing authorities that the IRS has prescribed for determining innocent spouse relief, set forth in IRM 25.15.1 et seq., Rev. Proc. 2013-34 for IRS examiners, and CC-2012-004 and CC-2013-011 for IRS Counsel in U.S. Tax Court cases.[47] Yet the Government has not produced the administrative file relating to Stanley's innocent spouse review or any evidence that these procedures were followed.[48]

In evaluating the factors, those weighing in Ms. Stanley's favor include her marital status, lack of knowledge, reason to know, absence of significant benefit, and compliance with her tax obligations. Most critically, police reports, criminal charges, and sworn testimony document the extreme physical, emotional, and psychological abuse Defendant-Appellant Stanley suffered, which falls squarely within Rev. Proc. 2013-34's recognition that abuse may override all other factors and independently justify relief.[49] Disclosure of Ms. Stanley's ARTS membership interest on Form 8857 would not have altered this analysis: ownership of separate assets does not preclude relief, and the absence of economic hardship is treated as a

---

[46] I.R.S. Notice CC-2012-004 (Jan. 5, 2012); I.R.S. Notice CC-2013-011 (June 7, 2013).

[47] I.R.S. Notice CC-2012-004 (Jan. 5, 2012); I.R.S. Notice CC-2013-011 (June 7, 2013).

[48] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[49] ROA.1306–08.

neutral factor. Thus, the record provides no basis to conclude that the IRS would have reached a different result or that the alleged omission had any material effect. The innocent spouse factors applied to Defendant-Appellant Stanley demonstrate she is entitled to relief. Regarding marital status, Rev. Proc. 2013-34 § 4.03(2)(a) favors relief where the requesting spouse is separated or divorced.[50] Ms. Stanley separated from Stacey in 2005 following his arrest for domestic violence against her and obtained a divorce in 2010.[51] This factor weighs in favor of relief.

When the IRS reviews the economic hardship factor, relief is favored if denial would cause hardship; the absence of hardship is neutral.[52] To make this determination, Part IV of Form 8857 specifically requests a taxpayer's financial information so the IRS can evaluate whether denial would result in hardship.[53] IRS procedures go further, expressly instructing examiners in innocent spouse cases that "information should be solicited if omitted from the Form 8857." [54] Therefore, even if disclosure of the ARTS interest had eliminated a hardship showing, the proper

---

[50] *See* Rev. Proc. 2013-34 §4.03(a) (stating a requesting spouse is considered no longer married if "the requesting spouse is divorced" or "requesting spouse has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the Service makes its determination").

[51] ROA.1155, 1157:23–1158:2; ROA. 1279–1305.

[52] Rev. Proc. 2013-34 § 4.03(2)(b).

[53] *See* I.R.S. Form 8857, Part IV; I.R.S. Pub. 971, *Innocent Spouse Relief*, at 9 (Dec. 2021).

[54] I.R.M. 25.15.3.9.4.1.2. Obviously, the record contains no information on whether the IRS solicited additional information from Stanley and the result of that solicitation.

18

outcome would be a neutral finding rather than an adverse one. Thus, this factor does not weigh against relief.

Next, the IRS analyzes whether the requesting spouse knew or had reason to know of the understatement, and abuse may override this factor.[55] Although listed as a member of ARTS, Ms. Stanley lacked access to records, never received distributions, and lived modestly under Stacey's financial control while subjected to his severe physical abuse.[56] This factor favors relief. Where the nonrequesting spouse is legally obligated to pay the tax under a decree, the factor favors relief.[57] In 2024, the Florida court expressly assigned all IRS liabilities to Stacey.[58] This factor favors relief. Subsequently, the IRS reviews if the requesting spouse received a significant benefit from the nonrequesting spouse's failure to pay tax and relief is disfavored only if the requesting spouse enjoyed a significant benefit beyond normal support.[59] Ms. Stanley received no distributions from ARTS, lived with her parents, without a personal vehicle, and at modest expense levels.[60] Furthermore, Mr. Stacey is financially obligated to pay Stanley $591,663.94 from arrears in unpaid child support, unpaid alimony, fraudulently cashed insurance pay outs, and unpaid rental

[55] Rev. Proc. 2013-34 § 4.03(2)(c); 26 U.S.C. § 66(c).
[56] ROA. 1143:6; ROA.1401–18; ROA. 1225:1.
[57] Rev. Proc. 2013-34 § 4.03(2)(d).
[58] ROA.1281.
[59] Rev. Proc. 2013-34 § 4.03(2)(e).
[60] ROA.1135:4–1135:25; ROA. 1279–1305; ROA. 1401–18.

income from ARTS.[61] This factor favors relief. The IRS also looks to the requesting spouse's compliance with federal tax obligations.[62] Ms. Stanley has remained compliant in filing personal income tax returns since 2005.[63] This factor favors relief. Most importantly, the IRS evaluates whether the requesting spouse is abused by the nonrequesting spouse.[64] Abuse can override other considerations and independently justify relief.[65] The record establishes years of physical violence, stalking, and threats by Stacey that directly impaired Ms. Stanley's ability to question financial decisions.[66] This factor of abuse is met and it alone can be dispositive.

All the factors show Stanley should have been granted relief. If the IRS had known Defendant-Appellant Stanley's membership interest in ARTS Investments, LLC at the time of her innocent spouse relief request, the facts on the record demonstrate that each applicable factor would either strongly favor relief or be at worst neutral. Therefore, the IRS examiners or IRS counsel would have reached the

---

[61] Stanley has shouldered the full burden of raising Stacey's child since 2007 and is owed substantial amounts by Stacey, including $103,224.68 in child support arrears, $60,000 in past-due alimony, and $251,678.26 from fraudulently retained insurance payouts. ROA.1292. Moreover, Stacey owes Stanley $176,761 in unpaid rental income from ARTS Investments. ROA.1401–18. Altogether, Stacey's financial obligations to Stanley total $591,663.94, excluding the value of THE GRAND PRAIRIE PROPERTY. ROA.1135:4–25; ROA.1279–1305.

[62] Rev. Proc. 2013-34 § 4.03(2)(f).

[63] ROA.1225 (noting that some years Stanley was not required to file a tax return because she did not earn enough money to be required).

[64] Rev. Proc. 2013-34 § 4.03(2)(c)(ii)(B).

[65] Rev. Proc. 2013-34 § 4.03(2)(c)(ii)(B).

[66] ROA.1422–26.

same result and granted Stanley innocent spouse relief even considering the membership interest in ARTS. The absence of economic hardship would have been treated as neutral, the abuse factor would have likely overridden any contrary evidence, and the remaining factors would have still favored relief. The IRS would have reached the same conclusion that it would properly granted relief.

**VII. Arizona State Property Law Subjects the Grand Prairie property to community property law division pursuant to Stanley and Stacey's Divorce Decree**

The district court erred in refusing to apply Arizona community property law, which vested Ms. Stanley with an equal interest in property acquired during the marriage, including the Grand Prairie property previously held by ARTS Investments, LLC.

### a. Arizona State Law Controls Property Rights

The Supreme Court has long held that state substantive law governs a taxpayer's interest in property rights.[67] Also, the "property rights of a husband and wife are governed by the law of the couple's matrimonial domicile at the time of the acquisition of the property."[68] The matrimonial domicile consists of the location of

---

[67] *See United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985).
[68] *Lorenz-Auxier Financial Group, Inc. v. Bidewell*, 772 P.2d 41, 43, 160 Ariz. 218, 220 (Ariz. Ct. App. 1989).

domicile while married.[69] Domicile is established in Arizona by "'(1) physical presence and (2) an intent to abandon the former domicile and remain here for an indefinite period of time.'"[70] Once a person establishes a domicile, it does not alter unless there is change in "both an actual residence in a particular locality and an intention to remain there."[71] Also, in Arizona, "[a]ll property acquired by either husband or wife during the marriage is the community property of the husband and wife except for property that is: [a]cquired by gift, devise or descent."[72] A legal presumption exists that "all property acquired during marriage is community property."[73] Once the status of property as separate or community is established, it "does not change except by agreement or by operation of law."[74] The "time of acquisition" is defined as the point at which the right to obtain title arises, not when formal title is conveyed.[75]

The record is undisputed that Stanley and Stacey's marital domicile was Arizona. From July 1, 2000, to at least January 9, 2007, the married couple were legally domiciled in Mesa, Arizona, where they jointly owned a home at 2255 North

---

[69] *See Stephen v. Stephen*, 36 Ariz. 235, 284 P. 158 (Ariz. 1930).

[70] *Lake v. Bonham*, 148 Ariz. 599, 601, 716 P.2d 56, 58 (Ariz. Ct. App. 1986) (citing *DeWitt v. McFarland*, 112 Ariz. 33, 34, 537 P.2d 20, 21 (Ariz. 1975)).

[71] *McIntosh v. Maricopa Cnty.*, 73 Ariz. 366, 370, 241 P.2d 801, 803 (Ariz. 1952).

[72] ARIZ. REV. STAT. § 25-211.

[73] *Sommerfield v. Sommerfield*, 121 Ariz. 575, 577, 592 P.2d 771, 773 (Ariz. 1979).

[74] *Bender v. Bender*, 597 P.2d 993, 995, 123 Ariz. 90, 92 (Ariz. Ct. App. 1979).

[75] *See Stock v. Stock*, 250 Ariz. 352, 355, 479 P.3d 859, 862 (Ariz. Ct. App. 2020) (citing *Potthoff v. Potthoff*, 128 Ariz. 557, 561 (Ariz. Ct. App. 1981)).

22

Val Vista Drive and raised their daughter.[76] Ms. Stanley's testimony confirmed that even during temporary stays in Oklahoma and Texas, the Mesa, Arizona residence remained their domicile: "No one was in it when we weren't there. But you know, it was just like when you leave your house and go somewhere for a while."[77] These facts establish Arizona as their marital domicile, and thus Arizona community property law governs the characterization of property acquired during marriage.

In 2004, while married and domiciled in Arizona, Stacey and Ms. Stanley formed ARTS Investments, LLC, named after their daughter Alice Rose Tennielle Stacey, as an investment company to provide for her future, and acquired the Grand Prairie property.[78] Under Arizona law, the time of acquisition fixes its character as community property.[79] Arizona law also provides that "property acquired by either spouse outside this state shall be deemed to be community property if the property would have been community property if acquired in this state."[80] Accordingly, even though the Grand Prairie property was located outside Arizona, its acquisition occurred during Ms. Stanley's marriage and domicile renders it community property under Arizona law. Thus, the net sales proceeds from the Grand Prairie property must be treated as community property. By disregarding Arizona's substantive law

---

[76] ROA.1237–39; ROA. 1281; ROA.1309.
[77] ROA.1157:6-1157:8
[78] ROA.1115:15-1115:21; ROA.1423:6.
[79] *Bender v. Bender*, 597 P.2d 993, 995, 123 Ariz. 90, 92 (Ariz. Ct. App. 1979).
[80] ARIZ. REV. STAT. § 25-318.

23

and the presumption in favor of community ownership, the district court committed reversible error. Ms. Stanley held half the property interest and is entitled to half its proceeds.

### b. <u>Arizona Law Applies to LLC Ownership Interests</u>

Pursuant to Arizona state law, membership and ownership interests in limited liability companies acquired during marriage are presumptively community property and therefore subject to equal division between spouses.[81]

ARTS Investments, LLC was formed during the marriage while Stacey and Ms. Stanley were domiciled in Arizona, making it community property. In 2004, while domiciled in Arizona, Stanley and Stacey formed and registered ARTS Investments, LLC as an Arizona limited liability company.[82] Later in 2004, the Grand Prairie property was acquired with proceeds from the sale of Meadowbrook Park, a mobile home park owned by Meadowbrook Park, LLC, in which Stacey and Stanley were the sole members.[83] The purchase of the Grand Prairie property is

---

[81] *See Schickner v. Schickner*, 348 P.3d 890 (Ariz. Ct. App. Div. 1 2015) (discussing the limited liability companies "WME" and "PSC" were acquired during the marriage, so the companies constitute community property); *MacCollum v. Perkinson*, 185 Ariz. 179, 183, 913 P.2d 1097, 1101 (Ct. App. 1996), corrected (Mar. 13, 1996) (citing *See Cummings v. Weast*, 72 Ariz. 93, 231 P.2d 439 (Ariz. 1951)); *see also GAF Corp. v. Diamond Carpet Corp.*, 117 Ariz. 297, 572 P.2d 125 (Ct. App. Div. 1 1977); *see also Bryson v. Bryson*, No. 1 CA-CV 16-0531 FC, 2017 WL 2483722, at *4 (Ariz. Ct. App. June 8, 2017) ("the husband sought to buy out his wife's half of the community's 50% interest in the husband's medical practice.").
[82] ROA.1115:15-1115:21.
[83] *See* ROA.1127:19-1127:23; ROA. 1252; ROA.1115.

subject to community property because all property acquired during marriage is presumed community property unless shown to be gift, devise, or descent and property acquired during marriage with community funds retains its community character, regardless of where it is located.[84] Thus, because ARTS was formed with community marital funds and the Grand Prairie property was acquired during Stanley and Stacey's marriage while the couple were domiciled in Arizona, both the company and its assets are presumptively community property.

The record confirms this presumption through Stacey's own sworn admissions. In his discovery responses, Stacey admitted that he and Ms. Stanley formed ARTS in Arizona in 2004 and they are its only members.[85] He denied sole ownership of ARTS, denied sole ownership of the Grand Prairie property and expressly admitted that he is "one of two equity owners of ARTS."[86] Likewise, ARTS itself confirmed in its discovery responses that Ms. Stanley has an ownership interest, "Stacey and Defendant Emma Stanley own ARTS."[87] These admissions confirm that Ms. Stanley maintains a one-half interest in ARTS and its assets.

Furthermore, the community-property classification is confirmed by subsequent events. ARTS allegedly issued Ms. Stanley Schedule K-1s in 2017,

---

[84] ARIZ. REV. STAT. § 25-211(A).
[85] ROA.1354
[86] ROA. 1360, 1372.
[87] ROA.1391–92.

25

2018, 2019, 2020, 2021, and 2023, allocating her fifty percent of profits, losses, and capital, totaling $176,761.[88] Although Defendant-Appellant Stanley was denied any of the distributions,[89] the issuance of the Schedule K-1s demonstrates Stacey's acknowledgment of her vested ownership rights. Accordingly, under Arizona community property law, ARTS Investments, LLC and its asset, the Grand Prairie property, are community property. Ms. Stanley therefore holds a one-half ownership interest, entitling her to half of the net sale proceeds currently held in the court's registry.

### c. The United States' Tax Liens Attach Only to Stacey's Interest, Not to Stanley's One-Half Ownership

A federal tax lien attaches only to "all property and rights to property… belonging to [a taxpayer]." 26 U.S.C. § 6321. It does not extend to the ownership rights of a non-liable spouse.[90] While married and domiciled in Arizona, Stanley and Stacey acquired the Grand Prairie property via ARTS Investments, LLC.[91] Both were equal fifty percent members and it was community property under Arizona law.[92] Eight years after the purchase, the IRS filed its first tax lien against John

---

[88] ROA.1401–18.
[89] ROA.1225.
[90] *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 725 (1985) (determining the United States "steps into the taxpayer's shoes" and "acquires whatever rights the taxpayer himself possesses").
[91] ROA.1263.
[92] ROA.1261.

Stacey in 2012, for liabilities from tax years 1995 and 1997.[93] That lien could only attach to Stacey's one-half interest in ARTS, not to Stanley's pre-existing equal interest. Therefore, the Government's liens cannot diminish Stanley's ownership rights. She is entitled to receive her one-half interest in the Grand Prairie property, free of the IRS's claims against Stacey.

## CONCLUSION

The district court erred in granting summary judgment to the United States. The alleged omission of Defendant-Appellant Stanley's membership interest in ARTS on Form 8857 was not a representation within the meaning of the duty of consistency, was not relied upon by the IRS, and caused no prejudice to the United States. The U.S. Tax Court's original innocent spouse determination under 26 U.S.C. § 66(c) was properly grounded in the holistic application of the factors set forth in Rev. Proc. 2013-34, all of which either favored relief or were neutral. The record also establishes pervasive abuse that independently compels equitable relief and overrides contrary considerations. The district court expanded the duty of consistency beyond its narrow and equitable purpose, disregarded binding state property law, and resolved factual disputes against the non-movant. Summary judgment in favor of the United States should therefore be reversed.

---

[93] ROA.27, 39:31.

Respectfully submitted,

DAVID COFFIN, PLLC

*/s/ David B. Coffin*
David B. Coffin
SBT 24010807
300 Miron Dr.
Southlake, TX 76092
(817) 251-7049
(817) 796-1498 FAX
dcoffin@davidcoffinlaw.com
Attorney for Emma Stanley

28

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on August 27, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ David B. Coffin*
**David B. Coffin**

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:

- this brief contains 5,891 words and 788 lines of text.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with a 14 point size font named Times New Roman.

*/s/ David B. Coffin*
**David. B Coffin**
**Attorney on Record for Appellant-Defendant Stanley**

29